OMAN CONSTRUCTION COMPANY, Inc.,
Appellant,

v.

Bertha M. MILLER, Executrix of the Estate
of Maurice L. Miller, Deceased, Appellee.

Court of Appeals of Kentucky.

Nov. 10, 1967.

As Modified on Denial of Rehearing

March 1, 1968.

James W. Stites, Charles W. Porter,
King & Porter, Louisville, for appellant.

Raymond C. Stephenson, Louisville, Er-
nest G. Baxter, Stanford, for appellee.

CULLEN, Commissioner.

In an effort to avoid a barricade in the
form of a large sign which the appellant,
Oman Construction Company, had placed
across the inner lane of the two west-
bound lanes of 4-lane U.S. Highway No. 60
east of Middletown, Kentucky, one Maurice
L. Miller, Sr., who had approached the
scene from the east, applied the brakes on
his car and it skidded across the median
area into the path of and was crushed by

an east-bound truck. Miller sustained fatal injuries and his passenger, Bruce De Rossett, sustained injuries of a serious nature.

Miller's personal representative sued Oman. De Rossett sued Oman and Miller. Oman cross-claimed against Miller for contribution or indemnity on De Rossett's claim. The jury found against Oman on the Miller claim and the De Rossett claim and on the cross-claim. The jury found for the Miller estate on De Rossett's claim. Miller's personal representative recovered $17,500 and De Rossett recovered $15,000, from Oman Construction Company. Oman paid the De Rossett judgment and appealed only as against the Miller estate, claiming (1) that Oman was entitled to judgment n. o. v. on the Miller claim because Oman was as a matter of law not negligent or Miller was as a matter of law contributorily negligent; and (2) that Oman was entitled to indemnity from Miller's estate on the De Rossett claim because the accident was caused solely by Miller's negligence, or Oman was at least entitled to contribution from the Miller estate because Miller was a joint tortfeasor.

It is our opinion that the evidence presented jury questions both as to Oman's negligence and as to Miller's negligence. Wherefore we are affirming the judgment.

Prior to the day of the accident work had been carried on for several months at a point on U.S. Highway No. 60 where access roads to and from Interstate Highway No. I–64 were being connected to U.S. 60. Approaching this point from the east the highway makes a downhill slope for a distance of around 1100 feet, beginning at a crest of a hill where the highway comes out of a curve. About at the crest of the hill, some 1100 to 1200 feet from the point where the road work was being done, there was a diamond-shaped sign on a metal post standing on the right (north) shoulder, bearing the words "ROAD CONSTRUCTION AHEAD." This sign had been there

all of the months the work had been going on.

The access roads being connected with U.S. 60 came into U.S. 60 from the south, so most of the construction work as it affected U.S. 60 was limited to the east-bound lanes. The evidence in the instant case was that at no time prior to the day of the Miller accident had the construction work interfered with the regular flow of west-bound traffic at 60 miles per hour past the construction site. Miller had traveled the road several times a week for a period of months and was familiar with the nature of the work.

On the day of the accident Oman was engaged in work on a deceleration lane in the median area on U.S. 60, which work necessitated some movement of construction vehicles in the inner west-bound lane. The Oman foreman therefore placed in the inner west-bound lane, 900 feet east of the work point, a large sign, 4 feet 6½ inches high and 5 feet 8 inches wide, bearing the words "DANGER-ROAD UNDER CONSTRUCTION." The sign substantially blocked the inner west-bound lane. The point at which it was placed was below and west of the crest of the hill. The evidence was that a motorist coming from the east, in a passenger vehicle, could see the *top* of the sign when some 430 feet away, but at that point could not tell where the sign was sitting (that is, whether in the median or elsewhere). The evidence further was that when within 300 feet a motorist could see the entire sign and its location, *if there was no traffic to block the view.*

At the same time that he placed the above-mentioned sign on the roadway, the Oman foreman also placed a similar sign on the right (north) shoulder around 150 to 200 feet east of the diamond-shaped, permanent sign mentioned at an earlier point in this opinion.

The accident occurred around 1:00 p. m. The day was clear, the sun was shining and the road was dry. Miller, with De Rossett

as his passenger, approached the scene from the east. The testimony for the plaintiffs was that as the Miller car came around the curve approaching the crest of the hill it was behind a large cattle truck, which was *straddling* the center line of the west-bound lanes. The truck pulled over into the right lane and Miller then undertook to pass the truck. De Rossett's testimony was: "We pulled out in this lane to pass and before we got straightened up, well, there sat that sign * * * when we saw the sign I'd say we was about 100 feet from the sign when we pulled out from behind the tractor and trailer." Miller applied his brakes and his car skidded across the median area into the path of an east-bound truck.

■ As concerns the question of Oman's negligence, we think reasonable minds could conclude that Oman did not use ordinary care in placing the sign as a barricade across the inner traffic lane. The sign was below the crest of a hill and was not visible for any appreciable distance to a motorist traveling behind a truck. the other temporary sign placed by Oman on the shoulder of the road was not calculated to constitute an effective warning because motorists had been lulled into a feeling of security by reason of the fact that a permanent warning sign had been there for months and there never had been any condition at the work site requiring even a reduction of speed. The traffic lanes had never been barricaded or impeded. Without regard to the foregoing, we think reasonable men could conclude that the barricading of a traffic lane is such a radical and dangerous thing as to demand specific warnings of the existence of the barricade—large, clear and unmistakable. It is a matter of common experience that in many instances when a traffic lane ends or is blocked, warning is given by frequent, multiple signs, barrels, painted lines, etc. As an alternative, in temporary situations flagmen have been used. In the instant case there were flagmen near the site of the work but none at a place to give warning of the barricade.

■ We conclude that the question of Oman's negligence properly was submitted to the jury. For the same reasons we think that the question of Miller's negligence (both as concerns his right to recover from Oman and as concerns his liability on De Rossett's claim) was for the jury. Reasonable men could believe that Miller could not and did not see that there was a barricade until he started to pass the truck; that his failure to be alerted by the temporary sign on the shoulder of the road was not negligence because the construction work warned of by the permanent sign which had been at that place for months had never been such as to present any impediment to traffic; and that Miller reasonably was not required to anticipate that a traffic lane would be blocked without distinct and specific warning thereof. Also, we think that reasonable men could find that Miller's action in abruptly applying his brakes, rather than attempting to fall back in behind the truck, was excusable emergency action.

The judgment is affirmed.

WILLIAMS, C. J., and HILL, MILLIKEN and STEINFELD, JJ., concur.

PALMORE, J., not sitting.

MONTGOMERY and OSBORNE, JJ., dissenting.